847 F.2d 680
 128 L.R.R.M. (BNA) 2762, 57 USLW 2043,
109 Lab.Cas. P 10,566
 FLORIDA POWER CORPORATION, Plaintiff-Counterclaim-Defendant-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, SYSTEM
COUNCIL U-8 INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL UNION 433,
Defendant-
Counterclaim-
Plaintiff-Appellant.
 No. 86-3821.
 United States Court of Appeals,
Eleventh Circuit.
 June 16, 1988.
 
 Cary R. Singletary, Singletary and Singletary, Tampa, Fla., for defendant-counterclaim plaintiff-appellant.
 J. Lewis Sapp, Elarbee, Thompson & Trapnell, Atlanta, Ga., for plaintiff-appellee counter-claim-defendant.
 Appeal from the United States District Court for the Middle District of Florida.
 Before VANCE and CLARK, Circuit Judges, and GARZA*, Senior Circuit Judge.
 VANCE, Circuit Judge:
 
 
 1
 This appeal involves the district court's order vacating the decision of an arbitrator in a labor dispute. Because the district court exceeded its limited authority to review arbitration awards, we reverse.I.
 
 
 2
 Charles Waters worked for appellee Florida Power Corporation as a coal yard fuel equipment operator. On July 23, 1985, while Waters was off company time, a police officer stopped and arrested Waters for driving while intoxicated. The police officer searched Waters' car and discovered cocaine, drug paraphernalia and a concealed weapon. Waters was charged with driving under the influence of alcohol and with cocaine possession.
 
 
 3
 After his arrest Waters agreed to work with law enforcement authorities and assist them with drug investigations. After six months of cooperation with the government and 150 hours of community service work, the drug charges against Waters were dropped. Waters pled guilty to the charge of driving while intoxicated, in return for probation, a fine and temporary revocation of his driver's license.
 
 
 4
 Back in August, however, Florida Power had learned of Waters' July 23 arrest. The company initiated an investigation of the episode and obtained the records of the arrest. On August 16, 1985 the company suspended Waters for possible violation of a recently adopted company drug policy. Florida Power discharged Waters in September, 1985.
 
 
 5
 Appellants filed a grievance on behalf of Waters, alleging that the company had violated the collective bargaining agreement. After a hearing on April 9, 1986 the arbitrator sustained the grievance, and ordered Waters reinstated with back pay. The arbitrator found that under the circumstances discharge was too severe a punishment for Waters.[1]
 
 
 6
 Florida Power filed this action in district court pursuant to 29 U.S.C. Sec. 185 to vacate the arbitration award. On November 10, 1986 the district court granted the company's motion for summary judgment, vacating the award on two grounds: (1) that the award was not drawn from the essence of the collective bargaining agreement, and (2) that the award violated public policy.
 
 
 7
 The Supreme Court's recent decision in United Paperworkers Int'l Union v. Misco, Inc., --- U.S. ----, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), clearly establishes that the district court erred by vacating the arbitration award on the second ground. See id. 108 S.Ct. at 373-74. We now hold that the district erred by vacating the award on the first ground as well.
 
 II.
 
 8
 The collective bargaining agreement between Florida Power and the union is clear. Article II, section I provides:
 
 
 9
 The Union recognizes that the management of the Company and the direction of the working affairs, including the right to hire, discipline, suspend, discharge, promote, demote or transfer, for sufficient and reasonable cause, to establish and enforce rules and regulations consistent with any applicable terms of this agreement, remain with and are vested in the Company; subject, however, to the employees' rights for adjustment through the grievance procedure.
 
 
 10
 Florida Power and the union thus have agreed that the discharge of an employee must be based on sufficient and reasonable cause, and that a determination of what constitutes sufficient and reasonable cause is subject to the employee's right of adjustment through the grievance procedure. By entering into the collective bargaining agreement Florida Power and the union further contracted for the arbitrator's interpretation of sufficient and reasonable cause. Far from exceeding his authority under the agreement, therefore, the arbitrator simply gave the parties what they bargained for.
 
 
 11
 Federal courts traditionally have given great deference to an arbitrator's interpretation of a collective bargaining agreement and have taken a very limited role in reviewing arbitration awards. Perhaps the single most significant and common issue to which this deference extends is the issue of what constitutes sufficient and reasonable cause for discharge. See, e.g., Northwest Airlines, Inc. v. Airline Pilots Ass'n, Int'l, 808 F.2d 76, 81 (D.C.Cir.1987) (arbitration board within its authority in considering employee's claim that he had been fired without just cause); E.I. DuPont de Nemours & Co. v. Grasselli Employees Indep. Ass'n of East Chicago, Inc., 790 F.2d 611, 615 (7th Cir.) ("While this Court does not necessarily agree with the arbitrator's conceptions of just cause, mere disagreement does not allow an overturning of the award."), cert. denied, --- U.S. ----, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986); New Meiji Mkt. v. United Food & Commercial Workers Local Union # 905, 789 F.2d 1334, 1335-36 (9th Cir.1986) (question of interpretation of discharge for cause provision in collective bargaining agreement is a question for the arbitrator); International Bhd. of Elec. Workers, Local Union No. 53 v. Sho-Me Power Corp., 715 F.2d 1322, 1326 (8th Cir.1983) (it is unimportant whether the court agrees with the arbitrator's interpretation of the collective bargaining agreement's "discharge for cause" provision), cert. denied, 465 U.S. 1023, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984);[2] Super Tire Eng'g Co. v. Teamsters Local Union No. 676, 721 F.2d 121, 125 (3rd Cir.1983) ("once it is conceded that the arbitrator had the power to make a just cause determination, the district court is not free to review the merits of that determination"), cert. denied, 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984); Anaconda Co. v. District Lodge No. 27 of the Int'l Ass'n of Machinists & Aerospace Workers, 693 F.2d 35, 37 (6th Cir.1982) (" 'just cause'.... has frequently been upheld as the basis for an arbitrator's award"); Arco-Polymers, Inc. v. Local 8-74, 671 F.2d 752, 756 (3rd Cir.) (fact that arbitrator wrote an opinion explaining his interpretation of the "just cause" provision, even a confusing and ambiguous opinion, should not cause the award to be vacated), cert. denied, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).
 
 
 12
 Two Third Circuit cases are particularly instructive. In Super Tire, the collective bargaining agreement provided that the company could dismiss employees without notice on several grounds, including drinking during working hours.[3] The arbitrator found that the employee's conduct fell within this ground for immediate dismissal, but also interpreted the "just cause" clauses of the agreement to apply to all dismissals. 721 F.2d at 124. The court of appeals refused to set aside the arbitrator's decision, concluding that "[b]ecause the arbitrator held the specific dismissal provision subject to an overall just cause provision, he then was free to determine whether there was just cause for dismissal...." Id. at 125. In this case, it is not disputed that Waters' dismissal is subject to the "sufficient and reasonable cause" provision of the collective bargaining agreement. The arbitrator's decision in this case therefore should be accorded even more deference than the arbitrator's decision in Super Tire.
 
 
 13
 In Local 863 Int'l Bhd. of Teamsters v. Jersey Coast Egg Producers, Inc., 773 F.2d 530 (3rd Cir.1985), cert. denied, 475 U.S. 1085, 106 S.Ct. 1468, 89 L.Ed.2d 724 (1986), the employer discharged an employee who was later convicted of a misdemeanor. The arbitrator found, however, that there was no just or sufficient cause for the discharge, as required by the collective bargaining agreement. Id. at 532. The court of appeals, reversing the district court's order vacating the arbitration award, held that the district court impermissibly imposed its own interpretation of the agreement by ruling that the misdemeanor conviction automatically supported the discharge. Id. at 534-35. The court stated:
 
 
 14
 The court may not reevaluate supposed inconsistencies in the arbitrator's logic or review the merits of the arbitrator's decision. It remains the decision of the arbitrator, and the arbitrator alone, whether the misdemeanor conviction constitutes just cause for the dismissal under the terms of the collective bargaining agreement.
 
 
 15
 Id. at 534 (footnote and citation omitted). The logic of the Third Circuit's opinion applies with even greater force in this case, where the employee Waters was not even convicted of any crime involving illegal drugs.
 
 
 16
 The Supreme Court has spoken many times on this issue. The Court has emphasized:
 
 
 17
 [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It was the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
 
 
 18
 United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). Disputes involving just cause provisions like the one in this case are the archetypal situations for deferring to the arbitrator's interpretation.
 
 III.
 
 19
 We have no enthusiasm for the arbitrator's decision. The arbitrator, however, did what he was supposed to do.
 
 
 20
 [T]he arbitrator performed the very role contemplated by the parties to that agreement; he interpreted the contract in order to decide whether [the employee] had been discharged for "just cause." The arbitrator's judgment on this issue was precisely what the parties had bargained for.
 
 
 21
 United States Postal Service v. National Ass'n of Letter Carriers, 810 F.2d 1239, 1241 (D.C.Cir.), cert. granted, --- U.S. ----, 108 S.Ct. 500, 98 L.Ed.2d 499 (1987). The parties in this case did not bargain for the courts' judgment on this issue, they bargained for the arbitrator's judgment. See Misco, 108 S.Ct. at 370. Our decision to reverse the district court allows them to have it.
 
 
 22
 REVERSED.
 
 GARZA, Circuit Judge, dissenting:
 
 23
 I respectfully dissent. In my opinion the arbitrator failed to apply the collective bargaining agreement by failing to recognize Florida Power's authority to establish and enforce rules to promote its management and working affairs as well as provide a safer workplace for its employees.
 
 
 24
 Waters was arrested at 3:00 A.M. on July 23, 1985 for driving under the influence of alcohol. He admitted the loaded .357 magnun pistol, box containing 22 .357 magnun shells, four packets of cocaine and various drug paraphernalia including three inhalers, Deering precision instrument scale, preparation system, pen cap, brown zipper pouch with mirror, bottle, spoon and snort tube were all his. Waters also admitted he had been involved in the distribution of illegal drugs for several weeks. He was charged with possession of cocaine, possession of drug paraphernalia, possession of a concealed weapon and driving under the influence.
 
 
 25
 Article II, section I of the Collective Bargaining Agreement states in pertinent part:
 
 
 26
 The Union recognizes that the management of the Company and the direction of the working affairs, including the right to hire, discipline, suspend, discharge, promote, demote or transfer, for sufficient and reasonable cause, to establish and enforce rules and regulations consistent with any applicable terms of this agreement, remain with and are vested in the Company; subject, however, to the employees' rights for adjustment through the grievance procedure.
 
 
 27
 In June of 1985 Florida Power pursuant to its authority under the collective bargaining agreement, issued a policy on drug abuse. The purpose is "to assure a work environment that is free from illegal possession and/or use of drugs or controlled substances."
 
 
 28
 Any regular employee selling or delivering illegal drugs or controlled substances not prescribed by a licensed medical physician will be suspended pending investigation, should the employee be judged to have violated this provision of the policy, he or she will be discharged.
 
 
 29
 The policy is clear, straight forward and unambiguous. If you are selling or delivering illegal drugs you will be discharged regardless of where and when the violation occurs. In a situation where an unambiguous policy exists, the arbitrator's task is largely limited to whether sufficient notice has been given to the employee and whether the policy is applied indiscriminately. The arbitrator was not requested to pass on either of these issues.
 
 
 30
 At arbitration Waters admitted he used and sold illegal drugs. He also stated he acquired his drug paraphernalia from a person who was assisting him in setting up his operation. Despite the express language of the drug policy, the evidence Florida Power had gathered to make its decision that sufficient and reasonable cause existed to dismiss Waters and the admission by Waters of using and selling illegal drugs, the arbitrator concluded "extenuating circumstances" were present and determined the dismissal was too severe. The extenuating circumstances included: Waters was not suspended from his employment until three weeks after his arrest; he offered to submit to a drug screen; and the state attorney, following Waters' cooperation with the police in an effort to expose other drug dealers, dropped all charges, except driving under the influence.
 
 
 31
 Like the majority, I agree the determination of what is sufficient and reasonable cause is for the interpretation of the arbitrator. I differ however on the bounds of that interpretation.
 
 
 32
 [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreements. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 
 
 33
 United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Thus, an arbitrator may not hear evidence and come to his conclusion without interpreting and applying the collective bargaining agreement. The agreement gives Florida Power authority to "establish and enforce rules and regulations" to promote the management and working affairs of the Company. Therefore, Florida Power should be allowed to apply its strict drug policy.
 
 
 34
 The majority places weight on the fact Waters was not convicted of distributing illegal drugs. Whether Waters was convicted is of no relevance to whether Waters violated the drug policy. Evidence required for the "sufficient and reasonable cause" to dismiss an employee may not be equal to the "guilty beyond a reasonable doubt" required in a criminal prosecution. Certainly, if an employee is convicted of a crime which is grounds for dismissal that same evidence should be sufficient to establish casue for his dismissal. Nevertheless, Florida Power's allegation that Waters' violated its policy should be examined independently of the State of Florida's allegation of criminal misconduct.
 
 
 35
 Although our courts may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be a better one, Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960), we have a responsibility to insure the rights of both parties to the arbitration have been properly recognized. Certainly, it is the policy of our federal courts to encourage settlements of labor disputes in arbitration proceedings, Id. but this does not mean our courts should fail to correct a decision of an arbitrator simply because we favor the resolution of labor disputes at the arbitration level. Our responsibility is to insure the arbitrator has not dispensed his own brand of industrial justice. The arbitrator's decision must not be based on his perception of what he believes to be "fair" without applying the arbitration agreement. His real job here was to determine whether Florida Power had sufficient and reasonable cause to dismiss Waters, not whether Waters was a big volume drug dealer or whether Waters cooperated with law enforcement officials which resulted in a favorable disposition of his criminal charges. It is not within the arbitrator's authority to decide whether he likes the terms of a collective bargaining agreement and change them to suit his decision. Local 342, United Automobile, Aerospace & Agricultural Implement Workers of America v. T.R.W., Inc., 402 F.2d 727 (6th Cir.1968) cert. denied, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969). The company adopted a strong policy against drug activities and was entitled to do so pursuant to the collective bargaining agreement. In my opinion, the arbitrator simply ignored the evidence and the authority Florida Power had under the collective bargaining agreement to make his decision that "extenuating circumstances" were present. The only punishment for distributing illegal drugs under the policy is dismissal. In adopting such a strict policy, Florida Power was concerned with preventing a more severe problem. There is no guarantee a drug dealer will stop at the gates of his employment. Water's co-employees represent a fertile market for a drug dealer.
 
 
 36
 The Supreme Court recently reiterated that a court's refusal to enforce an arbitration award for public policy reasons must be based on well "defined and dominant ... laws and legal precedents and not from general considerations of supposed public interests." United Paperworkers Int'l v. Misco, Inc., --- U.S. ----, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987); W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); Muschany v. United States, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). My decision is limited to finding the arbitrator's decision did not draw its essence from the collective bargaining agreement.
 
 
 37
 In conclusion, I would affirm the district court's holding that the arbitrator's award did not draw its essence from the collective bargaining agreement because he simply ignored the Company's rights under the agreement and that the arbitrator dispensed his own brand of industrial justice by focusing on Waters' post arrest conduct and not whether Florida Power had sufficient and reasonable cause to terminate his employment.
 
 
 
 *
 Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The arbitrator apparently felt that the company's drug policy was unclear as to whether it applied to off-premises drug involvement. Appellant was never accused of distributing, using or even possessing contraband during working hours or on company property. The arbitrator also found that there was no threat to company morale or discipline from reinstatement
 
 
 [2]
 In Sho-Me Power, the Eighth Circuit upheld both the arbitrator's interpretation of "cause" to be synonymous with "just and reasonable cause," as well as the arbitrator's decision to reinstate the employee. See 715 F.2d at 1326
 
 
 [3]
 Florida Power's drug policy is not part of the collective bargaining agreement. Appellee suggests that the drug policy is somehow "included in the essence" of the collective bargaining agreement. This characterization is inaccurate. The drug policy statement is simply a rule that the company unilaterally adopted long after the parties had executed the collective bargaining agreement