[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/08/99
THOMAS  K. KAHN
CLERK

No. 98-2441

D. C. Docket No. 96-1038-CIV-T-25-(E)

IMC-AGRICO COMPANY,

Plaintiff-Counterdefendant-Appellee,

versus

INTERNATIONAL CHEMICAL WORKERS COUNCIL OF THE
UNITED FOOD AND COMMERCIAL WORKERS UNION, AFL-
CIO AND INTERNATIONAL CHEMICAL WORKERS UNION
COUNCIL, LOCAL 35-C,

Defendants-Counterclaimants-Appellants.

Appeal from the United States District Court
for the Middle District of Florida

**(April 8, 1999)**

Before EDMONDSON, COX and MARCUS, Circuit Judges.

COX, Circuit Judge:

The International Chemical Workers Union Council, Local 35C appeals following the district

court's vacatur of an arbitral award reinstating one of its members to employment with IMC-Agrico.

We reverse and remand.

**I.  Background**

Katherine Whitely is a member of the International Chemical Workers Union Council, Local

35C ("the Union") and a former employee of  IMC-Agrico.  Following a confrontation with her

supervisor, IMC-Agrico terminated her on the grounds of "argumentative attitude, abusive and threatening language and gross insubordination." (R.-1Ex. 3.) After Whitely filed an unsuccessful internal grievance of her termination, she sought arbitration in accordance with the collective bargaining agreement between the Union and IMC-Agrico.

Whitely's grievance, as submitted to the arbitrator, was that the employer had violated the agreement by terminating her without just cause. She argued that she had not engaged in the alleged bad conduct and that termination was too severe a penalty. IMC-Agrico framed the question to be submitted to the arbitrator as "[d]id the Company have just cause to terminate Whitely, and if not, what shall be the remedy?" (R.-11 Ex. 5 at 2.) The arbitrator's opinion adopted this recitation of the issue . (R.-11 Ex. 2.)

According to the arbitrator's factual findings, Whitely's supervisor, Robert Smith, radioed her while she was on duty and asked her to clean up a leaky concentrate bin. (R.-11 Ex. 2 at 2, 4.) Whitely objected to this request, and in the dispute that followed, Whitely threatened "to blow [Smith] away" and used racial epithets, including the "'n' word." (*Id.* at 4.) Smith asked Whitely to leave the plant. After she refused to leave, Smith had to have deputy sheriffs escort her off the premises. The arbitrator concluded that Whitely had indeed been argumentative, had used abusive language, had uttered a threat, and had refused to leave the premises when instructed. (R.-11 Ex. 2 at 5.) He further recognized that "[n]o company should be required to allow employees to continue to engage in such conduct." (*Id.*) The arbitrator stated, however, that under IMC-Agrico's internal rules "major infractions may be dealt with not only by discharge but also by disciplinary layoff." (*Id.*) He then concluded that "[t]he Company had just cause to impose a severe penalty, but one less than termination." (*Id.*) He noted that Whitely had been with the company for 22 years

2

and only had a limited disciplinary record. (*Id.*) In light of these facts, he concluded that a "long disciplinary layoff should be effective in correcting her behavior." (*Id.*) The arbitrator accordingly ordered the company to reinstate Whitely without back pay.

IMC-Agrico filed a petition in the district court to vacate the award on the ground that the arbitrator had exceeded the authority that the collective bargaining agreement conferred upon him. Specifically, IMC-Agrico argued that once the arbitrator had determined that Whitely's offense was grave enough to amount to a major infraction under the company's rules and warrant either discharge or disciplinary layoff, it was beyond the arbitrator's authority to tell the company that it exercised its discretion wrongly in choosing between those two options. The district court agreed and vacated the award. This appeal by the Union followed. The Union contends that the district court improperly vacated a valid arbitration award.

## II.  Standard of Review

We review *de novo* a district court's decision to vacate an arbitration award. *Sullivan, Long, Hagerty, Inc. v. Local 559 Laborer's Int'l Union*, 980 F.2d 1424, 1426 (11th Cir. 1993). A federal court's review of an arbitration award is extremely "narrow." *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361 (1960). A court may not vacate an arbitral award unless it is irrational, "exceeds the scope of the arbitrator's authority," or "fails to draw its essence from the the collective bargaining agreement." *Butterkrust Bakeries v. Bakery Workers Int'l Union Local 361*, 726 F.2d 698, 699 (11th Cir. 1984). An arbitrator exceeds the scope of his authority and issues an award that fails to draw its essence from the collective bargaining agreement that he is interpreting when he issues an award that contradicts the express

3

language of the agreement. *See Brunos, Inc. v. United Food and Commercial Workers Int'l Union, Local 1657*, 858 F.2d 1529, 1531 (11th Cir. 1988).

### III. Discussion

IMC-Agrico argues that the arbitrator's award should be vacated because it exceeded the scope of his authority and was outside the essence of the collective bargaining agreement. According to IMC-Agrico, the arbitrator in this case could do nothing more than decide whether or not Whitely actually engaged in the alleged conduct and whether that conduct constituted a "major infraction" that subjected Whitely to discharge under the company's internal Rules and Regulations. It contends that the arbitrator was not free to review the type of discipline imposed because the agreement reserved to it the exclusive right to discipline employees. The Union responds that the arbitrator acted properly in considering an issue submitted to him and reasonably construing the terms of the collective bargaining agreement. The collective bargaining agreement contains several clauses that relate to IMC-Agrico's ability to discipline employees. Section 4.02 of the agreement is the provision that was the subject of the arbitration, and it provides that:

> The Company retains the right to hire, discharge, discipline for just cause, transfer, and the right to relieve employees from duty because of lack of work or other legitimate reasons, provided that in the exercise of these rights the Company will not violate any of the terms of this Agreement.

(R.-11 Ex.1 at § 4.02.)[1] Section 4.01 of the collective bargaining agreement states that "the establishment and enforcement of reasonable rules of conduct, and the right to maintain discipline and efficiency of all employees, are . . . vested solely and exclusively in the Company, except as

---

[1] The parties appear to agree that discharge, like other forms of discipline, must be for "just cause." Section 8.08 of the agreement provides that "Seniority and the employment relationship shall terminate when an employee (1) Quits. (2) Is discharged for just cause. . . ." (R.-11 Ex.1 at § 8.08).

4

they may be expressly abridged or modified by other terms of this Agreement ." (R.-11 Ex. 1 at §

4.01.)  IMC-Agrico promulgated Rules and Regulations pursuant to § 4.01.  These rules create a

hierarchy of infractions: minor infractions, which entail a six-step disciplinary process beginning

with counseling and ending with discharge; serious infractions, whose punishment is a three-step

process beginning with a written warning and progressing to discharge; and major infractions, which

entail a "2 or 1-Step Disciplinary Process" of "Disciplinary Layoff (or) . . . Discharge."  (R.-1 Ex.

2.)  Under the company's Rules and Regulations, "[g]ross insubordination" and "[u]se of profanity

or abusive language towards a Supervisor" are major infractions.  (*Id.)*

The parties in this case bargained for an arbitrator to interpret the provisions of their

collective bargaining agreement that were submitted for arbitration.  (R.-11 Ex. 1 at § 12.01.)[2]  The

issue submitted to the arbitrator was whether there was just cause for Whitely's termination; it was

not limited to whether Whitely had engaged in a specific type of conduct.  As a result, the arbitrator

was required to construe the meaning and scope of the just-cause provisions of the agreement as they

applied to Whitely's termination.  As our precedent illustrates, we give great deference to an

arbitrator's interpretation of the provisions of a collective bargaining agreement. *See Florida Power

Corp. v. Int'l Bhd. of Elec. Workers, Local Union 433*, 847 F.2d 680, 680-81 (11th Cir. 1988).  It

is not our role to review the merits of the arbitrator's interpretation, but only to ask whether it was

arguably based on the language of the agreement. *See United Paperworks Int'l Union v. Misco, Inc.*,

484 U.S. 36, 38, 108 S.Ct. 364, 370-71 (1987); *United Steelworkers of America v. Enterprise Wheel*

---

[2]     The arbitration clause in the agreement provides that an arbitrator must only
consider the particular issue presented to him and base his decision on an interpretation of the
provisions of the agreement.  (R.-11 Ex. 1 at § 12.04.)  It further provides that the arbitrator
cannot add to or modify the collective bargaining agreement in any manner.  (*Id.*).

*& Car Corp.*, 363 U.S. 593, 599; 80 S. Ct. 1358, 1362 (1960) ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.").

IMC-Agrico's argument is that under the collective bargaining agreement, the just-cause provision only applies to its decision to discipline an employee and does not extend to the choice of possible sanctions contained in its Rules and Regulations. In arguing that the arbitrator intruded on an area where it had sole discretion under the agreement, IMC-Agrico relies upon *Butterkrust Bakeries v. Bakery Workers Int'l Union Local 361*, 726 F.2d 698 (11th Cir. 1984), and a series of other cases for the proposition that once an arbitrator finds that an employee has engaged in prohibited conduct, it is an implicit finding of just cause for termination and any subsequent decision to modify the type of discipline imposed is an act beyond the scope of the arbitrator's power. *See Warrior & Gulf Navigation Co. v. United Steelworkers of America*, 996 F.2d 279 (11th Cir. 1993); *E.I. DuPont de Nemours & Co. v. Local 900 of the Int'l Chem. Workers Union*, 968 F.2d 456, 458 (5th Cir. 1992); *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599 (5th Cir. 1989); *Morgan Serv. v. Local 323, Chicago & Central States*, 724 F.2d 1217, 1221 (6th Cir. 1984).

But the cases cited by IMC-Agrico are distinguishable. In *Butterkrust*, the collective bargaining agreement gave the company "sole control over employee discipline . . . subject only to the condition that termination be for just cause." *Butterkrust*, 726 F.2d at 699 (record citation omitted). The issue submitted to the arbitrator was whether just cause existed for the employee's discharge. The arbitrator found that the employee's conduct, combined with his prior employment

6

history, provided just cause for the termination. The arbitrator then concluded that the employee had engaged in post-termination conduct which mitigated this finding of just cause, and he ordered the employer to rehire the employee after the completion of a Dale-Carnegie course. *Id.* This court concluded that the arbitrator exceeded his authority: "The issue submitted here was limited to whether there was just cause for Woodard's discharge. Therefore, once the arbitrator made a finding on this issue, his authority came to an end." *Id.* at 700.

*Butterkrust* is distinguishable because the arbitrator in the case at bar did not conclude that the company had just cause for termination and then announce a different remedy. Instead, the arbitrator only found that Whitely had engaged in conduct that warranted either disciplinary layoff or discharge under the company's unilaterally promulgated rules. The pertinent question presented by this case, and not by *Butterkrust,* is whether the arbitrator acted within the scope of his authority in concluding that the collective bargaining agreement's just-cause provisions allowed him to review the appropriateness of the type of discipline imposed for Whitely's conduct. The other cases relied upon by IMC-Agrico are for the most part distinguishable based upon the language of the collective bargaining agreements involved in each case. It is an unobjectionable principle that an employer can bargain to have included in a collective bargaining agreement a provision to the effect that certain identified types of employee conduct always provide just cause for discharge. *See Warrior & Gulf Navigation*, 996 F.2d at 281 (agreement provided that employee who tested positive a second time for drug use was subject to "immediate discharge"); *Delta Queen*, 889 F.2d at 600 (agreement stated that officers could be discharged for insubordination or carelessness); *Morgan Serv.*, 724 F.2d at 1219 (agreement provided that company could discharge "without redress" an employee who committed insubordination). Likewise, the collective bargaining agreement can

7

confer on an employer the right to establish rules listing types of conduct that will always be sanctioned by immediate dismissal. *See, e.g., General Drivers, Warehousemen, and Help Local Union 968 v. Sysco Food Services, Inc.*, 838 F.2d 794, 796 (5th Cir. 1988) (agreement stated that "The Union recognizes the right of the Company to make and enforce Rules and Regulations and that violation thereof may be just cause for discipline or discharge of employees"). If the collective bargaining agreement confers on the employer the absolute right to discharge employees for certain types of conduct, then the inquiry of an arbitrator can be limited to "whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action." *Id.* Furthermore, once an arbitrator implicitly finds that the employee engaged in conduct that is defined by a bargaining agreement to be an offense subjecting him to discharge, then that it is an implicit finding of just cause and the arbitrator's task is finished. *See, e.g., Delta Queen*, 889 F.2d at 604 ("If a collective bargaining agreement defines 'proper cause' to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequences of his finding that a listed offense was committed").

In this case, the collective bargaining agreement does not clearly indicate whether the just-cause provision applies to the company's choice of a particular sanction for an employee's misconduct. Furthermore, the agreement does not contain any definition of just cause or any list of offenses that would always support the company's decision to discharge an employee. Instead, IMC-Agrico promulgated its own rules regarding the types of discipline that could be imposed for specified conduct. Although these rules were promulgated pursuant to authority given the company in the collective bargaining agreement, there is no language in the agreement mandating the construction of the agreement urged by IMC-Agrico.

8

The arbitrator, in interpreting the collective bargaining agreement's just-cause provision, implicitly concluded that it allowed him to review not only whether the challenged conduct had occurred, but also whether the sanction chosen by IMC-Agrico – discharge – was "just." Under this interpretation of the agreement, he concluded that even though Whitely had engaged in a major infraction as defined by IMC-Agrico's rules, that did not automatically mean that discharge was a "just" sanction. Instead, he construed the agreement to allow him to review the appropriate sanction for rule violations considering, among other things, the seriousness of the offense and the employee's work record. In essence, the arbitrator read the language of the agreement to allow him to conclude that conduct and circumstances that would constitute just cause for one particular sanction did not always provide just cause for imposition of another sanction. We hold that the arbitrator adopted a reasonable interpretation of the just-cause provision of the agreement. When there are two plausible interpretations of an agreement, then the arbitrator's choice of one over the other will be honored. *See, e.g., International Assoc. of Machinists & Aerospace Workers, District Lodge No. 50 v. San Diego Marine Constr. Corp.*, 620 F.2d 736, 739 (9th Cir. 1980).

Our conclusion is supported by authority in other circuits. The Second, Sixth, and Ninth Circuits have all held that if a collective bargaining agreement does not define "just cause" and does not include a list of offenses that would lead to termination, then any reviewing court must defer to an arbitrator's interpretation of the  scope and meaning of the just- cause provisions of the agreement. *See, e.g., First National Supermarkets, Inc. v. Retail, Wholesale & Chain Food Store Employees Union Local 338*, 118 F.3d 892 (2d Cir. 1997); *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890 (6th Cir. 1989); *San Diego Marine Constr. Corp.*, 620 F.2d at 739. In *Eberhard Foods*, 868 F.2d at 890-91, for example, the company promulgated rules providing that fighting on company

9

time or on company property was an offense that was punishable by discharge. The collective bargaining agreement did not mention the rules and only provided that the company could not discharge an employee without "just cause." *Id.* at 892. When an employee was terminated for violating the company's rule, the matter went to arbitration. The arbitrator found that the employee had fought on the property, but that he had the authority under the agreement to review the type of sanction imposed. *Id.* at 891-92. He then concluded that there was just cause for severe discipline but not for termination. *Id.* The Sixth Circuit upheld this award on appeal, noting that the agreement was ambiguous on the authority of the arbitrator to review the sanctions imposed for violation of work rules and that the arbitrator did not act unreasonably in interpreting the agreement as he did. *Id.* at 982-93.

Similarly, in *First National Supermarkets*, 118 F.3d at 894-97, the collective bargaining agreement provided that employees could only be terminated for just cause but did not explicitly define what "just cause" meant. The employer promulgated rules pursuant to its authority in the agreement to "establish policies" and "maintain order and efficiency" and stated that violation of the rules would be "just cause for immediate dismissal." *Id.* at 896. When an employee violated these rules, he was terminated and the matter went to arbitration. The arbitrator found that the employee had engaged in conduct forbidden by the rules, but that a violation of the work rules did not automatically provide just cause for termination. *Id.* at 897. He concluded that, in light of the employee's long, unblemished work record, just cause for termination was lacking. *Id.* The arbitration award was upheld on appeal by the Second Circuit on the ground that the arbitrator had acted within his authority in interpreting the just-cause provisions of the collective bargaining agreement to allow him to review the type of sanction imposed. *Id.* at 896-97; *accord San Diego*

*Marine*, 620 F.2d at 738 (arbitrator reasonably construed language of agreement to allow him to review employer's choice of termination instead of suspension for just cause even though he found that employee had been insubordinate).

The parties in this case bargained for the arbitrator, and not a federal court, to interpret the provisions of their collective bargaining agreement. Since the arbitrator's award was based on a reasonable interpretation of language in the agreement, we conclude that the arbitrator acted within the scope of his authority and issued an award that drew its essence from the parties' agreement. The arbitrator's decision in this case was exactly what the parties bargained for and it should not be disturbed The district court therefore erred in vacating the award.

## IV. Conclusion

The district court's judgment is reversed and remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.