**ALABAMA POWER COMPANY**
**Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 345 Defendant.**

**Civil Action No. 99–1091–AH–L.**

United States District Court,
S.D. Alabama,
Southern Division.

Jan. 19, 2001.

Edward G. Bowron, Pierce, Ledyard, Latta & Wasden, P.C., Mobile, AL, John J. Coleman, III, Marcel L. Debruge, Burr & Forman, Birmingham, AL, Alicia Beth Medders, Balch & Bingham, Birmingham, AL, for plaintiff.

Charles Y. Boyd, Gina D. Coggin, Gadsden, AL, for defendant.

## ORDER

HOWARD, Senior District Judge.

This matter comes before the Court on two motions: Defendant International Brotherhood of Electrical Workers Local 345 ("Union") Motion for Summary Judgment (Doc. 17), and Plaintiff Alabama Power Company's ("APCo") Motion for Summary Judgment (Doc. 20). This is an action, instituted by Plaintiff APCo, to vacate an arbitration award sustaining a grievance filed by Defendant pursuant to grievance-arbitration procedures of a Collective Bargaining Agreement ("CBA") in effect between APCo and the Union. For the reasons cited below, each parties' Motion is **GRANTED** in part and **DENIED** in part.

### I. Facts

APCo, an investor-owned utility, provides electric service to the majority of people in Alabama. Defendant Union is the certified bargaining representative for APCo's bargaining unit employees at its Barry Steam Generating Plant in Bucks, Alabama, and is signatory to the CBA. Grady Williams ("Grievant") was employed by APCo at Barry Steam Plant as an Assistant Plant Control Operator, the second highest position in the bargaining unit. His duties consisted largely of doing paperwork and giving readings to the Plant Control Operators who operated the steam

plant's generators. Grievant had been continuously employed by APCo for approximately 19 years prior to July of 1997. He had no prior discipline in his record, and was promoted to the position of Assistant Plant Control Operator in October of 1990. Grievant was terminated by APCo in July 1997 for reasons that the parties continue to dispute. This termination was grieved through the grievance procedure outlined in the CBA, but failed to provide a resolution satisfactory to either party. In response to APCo's position that its discharge of Grievant was warranted, the Union demanded and thereafter submitted the grievance to arbitration.

Robert W. Foster, selected by the American Arbitration Association as the arbitrator of the grievance, reviewed both parties' briefs and conducted a full hearing on September 11, 1999. The issue as the arbitrator described it was whether APCo "had 'sufficient and reasonable cause' to discharge the grievant? If not, what is the appropriate remedy?" *Order of Arbitrator Foster*, p. 2. The arbitrator made extensive findings of fact, among them the finding that "the grievant executed two time sheets in April 1997 showing that he was at work when in fact he was on vacation." *Id* at p. 10. From this relatively undisputed point, arbitrator Foster reviewed the applicable provisions of the CBA, including Article VIII(aa) of the CBA, which states in pertinent part: "[E]mployees are responsible for the proper discharge of their respective duties within the scope and training of their experience, and any negligence or failure in this respect will constitute grounds for disciplinary action or discharge after proper investigation." The arbitrator further found that while the Grievant had committed an "unacceptable" act of negligence, that APCo had nevertheless failed to meet "its burden of establishing by clear and convincing evidence that the grievant was guilty of a calculated and deliberate act of dishonesty." *Id.* at p. 11.

After finding the Grievant's termination for the lesser offense of negligence not supported by just cause, the arbitrator sustained the grievance on December 8, 1999, reinstating Grievant to his former position and ordering that Grievant receive "back pay and benefits for all time lost except for a period of 90 days which shall serve as a disciplinary suspension, less any wages from other employment or unemployment benefits received during this 90 day period." *Id* at p. 12. Though the arbitrator did not so find, this Court finds based upon the record and the parties' submitted briefs that the disciplinary measure of suspension had been expressly removed from the contract regulating disciplinary procedures between APCo and its employees, including its Union members. *See Plaintiff's Brief in Support of Summary Judgment* (Doc. 21), p. 14.

Pursuant to 29 U.S.C. § 185, APCo filed an action in this Court to review the arbitrator's decision, specifically requesting that arbitrator Foster's order be vacated in its entirety. Essentially, APCo maintains that this Court should declare that arbitrator Foster exceeded his authority in issuing an order that conflicts with, and is not rationally supported by, the essence and express terms of the parties' CBA.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *accord Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir.1992).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson,* 477 U.S. at 251–252, 106 S.Ct. 2505. The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)).

Once each movant satisfies their initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, as both movants have done in this case, the burden shifts to the respective nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton,* 965 F.2d at 998 (citing *United States v. Diebold, Inc.,* 369 U.S.

654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). " 'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.' " *Tipton,* 965 F.2d at 999 (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (internal quotation and citation omitted).

### III. Standard of Review

 A federal court's review of an arbitration award is extremely narrow. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). A court may not vacate an arbitral award unless it is irrational, "exceeds the scope of the arbitrator's authority," or "fails to draw its essence from the collective bargaining agreement." *Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers International Union,* 726 F.2d 698, 699 (11th Cir.1984). An arbitrator exceeds the scope of his authority and issues an award that fails to draw its essence from the collective bargaining agreement that he is interpreting when he issues an award that contradicts the express language of the agreement. *See Bruno's, Inc. v. United Food and Commercial Workers Int'l Union, Local 1657,* 858 F.2d 1529, 1531 (11th Cir.1988).

### IV. Discussion

The most recent authority in this jurisdiction to address the extent of the deference afforded an arbitrator's decision is *IMC–Agrico Co. v. Int'l Chem. Workers Council of the United Food and Commercial Workers Union,* 171 F.3d 1322 (11th Cir.1999). The case is quite similar to the one at bar, and should be read accordingly. In that case, a member of the Chemical Workers Union, Katherine Whitely, was discharged as an employee of IMC. This followed a confrontation with her supervi-

sor, over which IMC fired her for threatening the supervisor and for gross insubordination. As in the case at bar, the internal grievance process proved unsuccessful, leading to arbitration pursuant to the parties' CBA. The issue there, and also present before arbitrator Foster, was whether the employee had been terminated without "just," or (as the current parties herein term) "sufficient and reasonable," cause.

The arbitrator in *IMC–Agrico* found that Whitely had been argumentative during the incident, used abusive language, threatened the supervisor, and refused to leave the premises when instructed to do so. *IMC–Agrico*, 171 F.3d at 1324. Finding the CBA authorized that major infractions could be punished by discharge or disciplinary leave, the arbitrator concluded that the employer had just cause to impose a severe penalty, but not discharge. Objecting to the Whitely reinstatement, the employer filed an appeal to vacate the award, as APCo has done in the current matter. The district court vacated the arbitrator's award, but the U.S. Court of Appeals for the Eleventh Circuit upheld the award, ruling that the arbitrator had reasonably interpreted the collective bargaining agreement's just cause provisions, and had "issued an award that drew its essence from the parties' agreement." Id. at 1329.

The CBA at issue in *IMC–Agrico* gave the employer sole discretion to discipline employees and established a scale to determine the seriousness of the employee violations. The CBA also allowed that the most serious violations, or major infractions, would be punishable by discharge or disciplinary layoff. Thus, the issue presented to the arbitrator in the *IMC–Agrico* matter was not just whether the employee had engaged in a certain conduct, but also whether there was just cause for the discharge.

The Eleventh Circuit emphasized that courts give "great deference to an arbitrator's interpretation of the provisions of a collective bargaining agreement." *Id.* at

1326, *citing Florida Power Corp. v. Int'l Bhd. of Elec. Workers, Local Union 433,* 847 F.2d 680, 680–681 (11th Cir.1988). Accordingly, it is not the function of a federal court to "review the merits of the arbitrator's interpretation, but only to ask whether it was arguably based on the language of the agreement." *IMC–Agrico,* 171 F.3d at 1326, *citing United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987); *United Steelworkers of America,* 363 U.S. at 599, 80 S.Ct. at 1362 ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.").

The Eleventh Circuit rejected the employer's argument that, once an arbitrator finds that an employee engaged in prohibited conduct, it is an implicit finding of just cause for termination and any type of discipline imposed by the employer is beyond the scope of the arbitrator's adjudicatory powers. Instead, the court reasoned that should the collective bargaining agreement confer on the employer "the absolute right to discharge employees for certain types of conduct, then the inquiry of an arbitrator can be limited to 'whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action.'" *IMC–Agrico,* 171 F.3d at 1327. Under those circumstances, "once an arbitrator implicitly finds that the employee engaged in conduct that is defined by a bargaining agreement to be an offense subjecting [the employee] to discharge, then that it is an implicit finding of just cause and the arbitrator's task is finished." *Id., citing Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, AFLCIO,* 889 F.2d 599, 604 (5th Cir.1989).

The CBA in *IMC–Agrico* did not clearly indicate whether the just cause provision applied to the company's choice of a particular sanction, however, and it also did not

contain a definition of "just cause" or any list of offenses that would automatically call for discharge. *See IMC–Agrico*, 171 F.3d at 1327. Based largely on these two facts, the Eleventh Circuit held that the arbitrator "adopted a reasonable interpretation of language in the agreement." *Id.* at 1329. Indeed, an arbitrator's interpretation of an agreement is required if the applicable CBA does not define "just cause" or provide a list of offenses that lead to automatic termination, since there can always be more than one plausible interpretation of the provision. In such a set of circumstances, "[w]hen there are two plausible interpretations of an agreement, then the arbitrator's choice of one over the other will be honored." *Id.* at 1328, *citing Int'l Assoc. of Machinists & Aerospace Workers, District Lodge No. 50 v. San Diego Marine Constr. Corp.*, 620 F.2d 736, 739 (9th Cir.1980).

In the current matter, arbitrator Foster focused on and attempted to arrive at objective conclusions regarding the relevant elements of Grievant's conduct, including whether Grievant had been properly trained in correctly filling out his timesheet, whether Grievant knew of the seriousness APCo would attach to a timekeeping violation, and whether other APCo employees had been properly instructed on how to fill out their time-sheets. These are precisely the kind of detailed, factual inquiries normally reserved to a district court at the trial phase of a lawsuit. In reviewing an arbitrator's decision, however, the role of a federal district court is more akin to that of an appellate court. Like a circuit court exercising normal appellate review, a district court reviewing an arbitrator's award does not observe first-hand the examination of witnesses, and as such is not in the position to closely watch facial expressions, hear the varying tones of a witness' voice, or to note the body language of individuals under cross-examination. This function is instead shouldered by the arbitrator, and it is substantially for this reason that the district court's review of that function has been held to be "extremely narrow."

With that in mind, this Court is in no position to discover and has no authority to determine whether the Grievant is a dishonest, or merely a negligent, employee. The Court can and does find, however, that arbitrator Foster has characterized Grievant's actions as negligent. This leaves the Court only to determine whether arbitrator Foster exceeded his authority under the parties' CBA in finding that the negligent act of an advanced employee (with 19 years of experience and no prior disciplinary record) does not rise to the level of seriousness such that his termination would be for sufficient and reasonable cause. The Court holds today that arbitrator Foster did not exceed his authority in reinstating Grievant, for two essential reasons. First is the use of the disjunctive in Article VIII(aa) with regard to the punishment that may be imposed for employee negligence. Second, "sufficient and reasonable" cause is nowhere defined with such certainty in the parties' CBA such that the arbitrator may be said to have abused his proper discretion in attaching a reasonable meaning to the term.

Like the CBA at issue in *IMC–Agrico*, the agreement in place between APCo and the Union gives APCo sole discretion to discipline its employees. *See APCO and Union CBA, Article IV* ("The right to hire and discharge employees...will continue to be vested exclusively in [APCo]."). This provision is of little assistance, however, in determining the boundaries of previously-cited Article VIII(aa): "employees are responsible for the proper discharge of their respective duties within the scope and training of their experience, and any negligence or failure in this respect will constitute grounds for disciplinary action or discharge after proper investigation." The disjunctive "or" clearly contemplates that negligence can be rectified through mere disciplinary action. Naturally, Plaintiff argues that if there is a choice to be made between discharge and discipline, it should be APCo that makes the decision, based upon its retention of authority under Article IV. This is a strawman argument, how-

ever, as the Union does not dispute that APCo has the right to discharge employees. The issue under contention is not the existence of APCo's power to hire and fire, but whether that power (which clearly does exist) is unlimited. Not surprisingly, given the professional negotiations that led to the creation of the parties' CBA, APCo's power to terminate is not unlimited; Article V(j) of the parties' CBA demonstrates exactly where that limit can be found: "The Company has the right to lay off or discharge any employee for sufficient and reasonable cause ..."

■ Understanding that Article V(j) begs the question of what constitutes sufficient and reasonable cause for termination is to understand why the arbitrator is afforded such broad discretion to attach a legal meaning to the term. This is in fact the role of the arbitrator, to fashion context-driven meaning from a somewhat vague and abstract phrase, where, as is the case here, the parties' CBA does not confer on the employer the absolute right to discharge employees for certain types of conduct. As the Eleventh Circuit made clear in *IMC–Agrico*, only when the named conduct is itself an explicit precondition to mandatory discharge must an arbitrator end his inquiry with "whether or not the conduct took place." See *IMC–Agrico*, 171 F.3d at 1327. Such is not the case here, since the CBA at issue does not state that the only punishment for negligence is discharge. While discharge is an alternative to simple discipline, a termination may only take place for a cause that is sufficient and reasonable, the determination of which is precisely the inquiry that this Court finds being pursued in arbitrator Foster's order.

Contrary to Plaintiff's assertions in their Motion for Summary Judgment and elsewhere, arbitrator Foster's statement that APCo has not shown by "clear and convincing evidence" that the Grievant had participated in an intentionally fraudulent act does not replace the standard by which APCo may discharge employees. Rather, it is obvious that the phrase "clear and convincing" applies squarely to the fact-finding process properly exercised by arbitrator Foster, and not to his standard for determining what is sufficient and reasonable cause for discharge. That is to say that once the Grievant's conduct has been proven to be intentional or fraudulent, a proper reading of the parties' CBA would be to then determine whether sufficient and reasonable cause was present for termination. Invariably, intentionally fraudulent conduct would probably be sufficient, while negligent conduct would probably demand still more application of the facts to the phrase.

■ As a threshold matter, however, it is for the arbitrator to determine how that conduct may be proved, and by what standard. See *Sullivan, Long & Hagerty, Inc. v. Local 559, Laborers' Int'l Union of North America*, 980 F.2d 1424, 1429 (11th Cir.1993) ("An arbitrator's decision allocating the burden of proof among the parties or in fixing the legal framework for evaluation of a grievance ordinarily cannot be reviewed in federal court."). In his role as fact-finder, this Court cannot say that arbitrator Foster exceeded his authority by requiring that intentionally fraudulent conduct be proved by clear and convincing evidence. That Plaintiff may plausibly argue that a different interpretation could be attached to the arbitrator Foster's use of the phrase "clear and convincing" is not enough. Even if there was some doubt as to whether the phrase was solely confined to the arbitrator's evidentiary standard, and the Court does not actually suggest that such doubt is present, the U.S. Supreme Court has held that:

> A mere ambiguity in the opinion accompanying an award which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrator's have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be

undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement.

*Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361.

Using the standard described above, Arbitrator Foster found that Grievant committed a negligent act, but no more. He further found that such a negligent act by an employee with Grievant's credentials could not form the basis for a termination which would be supported by sufficient and reasonable cause. The arbitrator did not use the exact phrase "sufficient and reasonable cause", choosing instead to write "[a]fter careful consideration of the evidence and arguments of the parties, and based on the reasons set out above, the award is that the discharge of the grievant was not for just cause." *Order of Arbitrator Robert Foster,* p. 12. In light of the Supreme Court's holding in *Enterprise Wheel,* this arguable ambiguity in the arbitrator's interpretation of the agreement forms no basis whatsoever for this Court refusing to enforce the award. Indeed, there are considerable grounds for finding that no such ambiguity exists at all, in light of the parties' CBA, Article VI(c): "where it is found that such employees ... were **unjustly suspended or discharged,** they will be reinstated to their former position ... [and] will be paid the wages to which they would have been entitled had they continued in the Company's employment during the period of suspension or discharge." (emphasis added).

As it is nowhere written in the CBA that negligence triggers an automatic and mandatory discharge, and as the phrase "sufficient and reasonable cause" is nowhere precisely defined, the Court holds that arbitrator Foster's order of December 8, 1999 does not contradict the express language of the parties' CBA, that it does in fact draw its essence from the CBA and that arbitrator Foster did not exceed the scope of his authority. These findings apply, however, only to that portion of the arbitrator's order which reinstates Grievant to his former position, pursuant to Article VI(c) of the parties' CBA, with back pay and benefits.

■ At this juncture, it is necessary to evaluate the remedy arbitrator Foster saw fit to impose in light of his authority under the CBA. As stated in the Facts section of this Order, the arbitrator ordered Grievant reinstated with "back pay and benefits for all time lost except for a period of 90 days which shall serve as a disciplinary suspension, less any wages from other employment or unemployment benefits received during this 90 day period." Such a remedy was clearly not within the ability of the arbitrator to impose. While discretion certainly must exist with regard to the interpretation of vague "just cause" standards within the CBA, discretion cannot be allowed to justify the imposition of remedies favored by the arbitrator when said remedies are contractually unavailable to the parties.

As stated in the Facts section above, APCo's adoption of a progressive disciplinary program removed disciplinary suspensions as a type of punishment applicable to APCo employees prior to the termination of Grievant. Plaintiff APCo is thus absolutely correct when it argues that "Just as the *Butterkrust* arbitrator exceeded his authority in ordering that an employee attend a Dale–Carnegie course, the arbitrator here [Foster] did so by ordering a suspension—a disciplinary measure that had been expressly removed from the contract ..." *Plaintiff's Brief in Support of its Motion for Summary Judgment* (Doc. 21), p. 14.

■ APCo correctly cites *Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers Intern. Union,* 726 F.2d 698 (11th Cir.1984) for the proposition that an arbitrator's authority ends once a decision has been made upon the issue that is properly before the arbitrator. In *Butterkrust,* the collective bargaining agreement gave the company "sole control over employee discipline ... subject only to the condition that termination be for just

cause." *Id.* at 699. The issue submitted to the arbitrator was whether just cause existed for the employee's discharge. The arbitrator found that the employee's conduct, combined with his prior employment history, provided just cause for the termination. The arbitrator then concluded that the employee had engaged in post-termination conduct which mitigated this finding of just cause, and he ordered the employer to rehire the employee after the completion of a Dale–Carnegie course. The Eleventh Circuit concluded that the arbitrator exceeded his authority: "The issue submitted here was limited to whether there was just cause for Woodard's discharge. Therefore, once the arbitrator made a finding on this issue, his authority came to an end." *Id.* at 700.

Here, the only proper issue under consideration was whether Grievant Williams was fired for "sufficient and reasonable" cause. Having made the decision, which the Court today upholds, that Grievant's termination was not for just cause, and that reinstatement with full back-pay and benefits was required, arbitrator Foster's order should have come to an end. It did not, however, and arbitrator Foster's imposition of a remedy that does not exist as between the parties was beyond his authority, for doing so violated the rule that an arbitrator may not issue an "award that contradicts the express language of the agreement." *Bruno's*, 858 F.2d at 1531. The agreement applicable here is Article VII of the parties' CBA, which governs arbitration between the parties: "The board of arbitration will be governed wholly by the terms of this agreement and will have no power to add to or change its terms." As no such punitive remedy exists in APCo's disciplinary scheme at all, much less in the CBA itself, the Court holds that arbitrator Foster's remedy of December 8, 1999, which retroactively imposed a 90 day suspension impacting Grievant's back-pay and benefits award, was not within the arbitrator's discretion to fashion.

Article IV of the parties' CBA does not contemplate that any entity other than APCo bears the ultimate responsibility for meting out what it considers to be appropriate discipline, up to and including the termination of its employees. Though the ultimate penalty of discharge is subject to the qualifier that the discharge must comport with sufficient and reasonable cause, "The Company will have the right ... to exercise full control and discipline in the interest of proper service and the conduct of its business." *APCo and Union CBA, Article IV.* The arbitrator cannot simply impose what he feels to be a just disciplinary response to the Grievant's conduct, inasmuch as the issue of discipline to is reserved exclusively to APCo. This Court has not been asked to decide, and does not decide, what discipline, if any, may or may not be appropriate with respect to the Grievant's conduct presently at issue. Rather, this Court's sole function is to decide whether the arbitrator could have found, pursuant to his authority and under his duty to interpret the discharge within the boundaries and essence of the parties' CBA, that the Grievant's termination was not supported by sufficient and reasonable cause. The Court finds only that the arbitrator did not act outside the scope of his authority, nor did he issue an award in conflict with the express terms of the CBA, when he found that the termination of Grievant was not for sufficient and reasonable cause.

## V. Conclusion

Accordingly, the Plaintiff's Motion for Summary Judgment is **GRANTED** in part, but only as to the vacating of that part of the arbitration order which purports to impose any remedy other than the reinstatement of Grievant with full back-pay and benefits. The Defendant's Motion for Summary Judgment is therefore **DENIED** as to that part of the arbitrator's order of December 8, 1999, which the Court vacates today. In all other respects, arbitrator Foster's award stands as written. The Defendant Union's *Motion for Summary Judgment* is **GRANTED** with respect to the remaining portion of arbitrator Fos-

ter's order that survives review; conversely, Plaintiff's Motion for Summary Judgment is **DENIED** with respect to that portion of the order of December 8, 1999 that this Court has upheld.