## GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS LOCAL UNION 968, etc., Plaintiff–Appellee,

v.

## SYSCO FOOD SERVICES, INC., Defendant–Appellant.

No. 87–2231.

United States Court of Appeals, Fifth Circuit.

March 3, 1988.

Neil Martin, Steven R. Baker, Fulbright & Jaworski, Houston, Tex., for defendant-appellant.

Eric H. Nelson, Nelson, Locke & Fowler, Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, JOLLY, and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Sysco Food Services, Inc. appeals the district court's summary judgment enforcing an arbitrator's award that Albert Terrell should be reinstated to his job with full back pay and benefits. Finding that the arbitrator did not exceed his jurisdiction and that the award drew its "essence" from the Collective Bargaining Agreement ("CBA"), we affirm the district court's summary judgment in favor of the Union.

I

The underlying incident in this case occurred on March 1, 1985, when Albert Terrell, employed as a truck driver by Sysco, parked his automobile in a visitor's zone of Sysco's parking lot. Joel Wilson, Sysco's director of loss prevention, noted that Terrell had parked in the wrong place, and he issued a parking citation and called a tow truck to remove Terrell's car. Before Wilson placed the citation on Terrell's car and before the tow truck arrived, Terrell moved his car to an authorized space. Wilson later took the parking citation and put it on Terrell's car while it was parked in its correct spot. Terrell heard that he had been given the citation and went to the parking lot where he and Wilson met. Each of them presents a different version of what happened there; however, for the purposes of this decision we need recount only Wilson's version. Wilson signed a statement on March 1 that Terrell had confronted him and asked if he had placed a citation on Terrell's car. When Wilson responded that he had, Terrell "stated in a threatening manner" that Wilson had better never place another citation on his vehicle. Then he said to Wilson, "I will place something on you, you can't get it off if you do. You think you're so bad." Terrell crumpled the parking citation and threw it at Wilson as Wilson walked away. This paper hit Wilson on his left shoulder. Wilson stated that Terrell then picked up the citation, and Wilson requested Terrell to accompany him to the office of the director of transportation. Since the director was not in his office, Terrell returned to his truck to complete his delivery schedule.

After the incident, Wilson reported it to Company supervisors. Transportation director Ken Shortsleeve spoke with both Terrell and Wilson and investigated the matter, suspending Terrell until completion

of the investigation. Shortsleeve asked both Wilson and Terrell to take polygraph tests to support their differing versions of the story. Wilson took the polygraph test which supported his truthfulness; Terrell refused to take the test. On March 6, Shortsleeve sent the Union, which had filed a grievance on Terrell's behalf, a letter that stated:

> I placed Albert Terrell on suspension pending further investigation. At this time I informed him that if the polygraph examination results substantiated Joel Wilson's version of the circumstances of the incident in question, that Mr. Terrell would be terminated under the provisions of Rules 1 and 21 of Sysco Food Services, Inc. Policies & Procedures.
>
> The results of the polygraph examination conducted on March 4, 1985, confirm the truthfulness of Joel Wilson's statement.
>
> It is the decision of the Company to terminate Albert Terrell *for insubordination* to a Company official effective this date.

(Emphasis added.) The grievance proceeded to arbitration.

Relevant provisions of the CBA in effect at the time, include:

Article II.

MANAGEMENT RIGHTS ...

*Section 3.* The Union recognizes the right of the Company to make and enforce Rules and Regulations and that violation thereof may be just cause for discipline or discharge of employees. The only question which may be the subject of a "grievance" is whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action.

   . . . .

Article VIII.

ARBITRATION ... Section 1(c). The Arbitrator shall be bound by the express terms and provisions of this Agreement and he shall not have the power to add to or subtract from or to depart from or modify, alter, amend or change any of the terms of this Agreement. His award shall be final and binding upon the Company, the Union and all employees.

Relevant provisions of the Company's Policies and Procedures [1] are as follows:

> The following is a summary of Company policies which all employees are expected to follow. These rules of conduct were devised to protect the health, safety and general well being of the employees as well as the safety and security of the Company. These procedures are in addition to normal standards of conduct and safety; they are not intended to be complete and will be revised when necessary.
>
> 1. Employees are expected to conduct themselves in a professional, businesslike manner while on duty and to cooperate with each other in completing work assignments. Inappropriate behavior will not be tolerated and *will result in disciplinary action.* This includes but is not limited to: profane and/or abusive language or action; throwing objects; engaging in horseplay or practical joking; teasing; threats; intimidation or quarreling; and any unseemly act that might result in serious injury.
>
>    . . . .
>
> Violation of any of the following rules *will subject the employee to immediate termination:*
>
> 21. Insubordination will not be tolerated. This includes (but is not limited to a refusal to perform work assignments or the use of profane and/or abusive language toward any Company official or customer. . . .

(Emphasis added.)

## II

The arbitrator decided in favor of Terrell, and if his award is to be enforced, Terrell will be reinstated. In deciding the case, the arbitrator stated that he did not need to choose between the two versions of the

---

**1.** The Policies and Procedures are separate from the CBA, but are promulgated pursuant to Article II, section 3 of the CBA, and thus are incorporated as part of the agreement between the Company and the Union.

incident in question, but rather would merely assume Wilson's version. He found that even accepting Wilson's version, there had been no violation of Rule 21 because there had been no refusal to perform work assignments, and the grievant had not used profane language during the incident. The arbitrator also found that Terrell's language was not abusive, but rather that Terrell's tone and his choice of words indicated that he was clearly upset and justifiably annoyed. The arbitrator stated:

> Seemingly, this was due to his obvious irritation resulting from the discovery that he had a parking ticket on his car, even though he knew that he was legally parked, and to his belief that the ticket subjected his car to the possibility of immediate towing. To then have used what may be termed "street talk" in his subsequent encounter with Wilson cannot reasonably be viewed as constituting the use of abusive language within the intent and meaning of Rule 21 of the Company's Policies and Procedures. Absent a persuasive showing in the evidence that the specific conduct that resulted in the Grievant's discharge was tantamount to insubordination, as defined by Company Rule 21, the disciplinary action imposed upon the Grievant cannot rightfully be upheld.

In addition, the arbitrator found that he did not need to decide whether Terrell had violated Rule 1 since that rule calls for "discipline," but does not indicate that a violation will result in discharge as does Rule 21. He stated:

> Thus, even though it be assumed, without deciding, that the Grievant violated Rule 1, inasmuch as he has not been placed on notice that a violation thereof will subject him to immediate termination, it does not seem to the arbitrator that such violation alone can rightfully be found to support the sanction of discharge in the case at hand.

Having found that a violation of Rule 1 did not warrant discharge, and that Terrell had not violated Rule 21, the arbitrator directed the Company to reinstate Terrell with full back pay and benefits.

Upon the Company's refusal to accept the ruling of the arbitrator, the Union filed a complaint in district court seeking enforcement of the award. The district court held on summary judgment that the question for the arbitrator to decide was whether Terrell had been insubordinate under the Company rules and that the arbitrator had decided that the grievant had not been insubordinate. The district court therefore found that the arbitrator had drawn his decision from the "essence" of the CBA, that his award was therefore appropriate, and entered a judgment enforcing the award.

The Company has now appealed the district court's judgment to this court.

### III

#### A.

The central question on appeal is whether the arbitrator's decision was within his jurisdictional authority.[2]

Unlike cases in which the jurisdiction of the arbitrator is not contested and we are limited to reviewing whether his decision draws its "essence" from the CBA, *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), here we have full authority to determine whether the arbitrator's decision exceeded his jurisdiction. *New Orleans Steamship Ass'n v. General Longshore Workers, Local Union No. 1418,* 626 F.2d 455, 467 (5th Cir.1980), *aff'd,* 457 U.S. 702, 102 S.Ct. 2672, 73 L.Ed.2d 327 (1982). We will therefore examine whether the arbitrator acted within his jurisdiction in holding that the Company could not impose the penalty of discharge in this case.

#### B.

■ The Company argues that by virtue of the language of Article II, section 3 of the CBA, which limits the subject of griev-

---

**2.** We find that summary judgment was warranted in this case since the parties agree upon the material facts. *Smith v. Kerrville Bus Co.,* 709 F.2d 914 (5th Cir.1983).

ances under the rules to whether the specific conduct constituting a violation occurred, the arbitrator exceeded his jurisdiction when he found that discharge was not a proper punishment. With respect to Rule 21, the arbitrator found that Terrell had not engaged in insubordination. Thus, the arbitrator did not consider whether discharge was an appropriate penalty for a violation under Rule 21. Although it argued differently in its brief before us,[3] Sysco conceded at oral argument that the arbitrator had jurisdiction to determine whether Terrell's conduct constituted insubordination and that this part of the decision, that Terrell did not violate Rule 21, drew its essence from the CBA and the incorporated rules. This late-seen light guided the Company correctly. We agree with the district court that, in analyzing whether Terrell broke Rule 21, the arbitrator had to determine whether Terrell's actions constituted insubordination. Section 3 of Article II of the CBA states that "the only question ... is whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action." "Insubordination" *is* the "specific conduct" that constitutes a violation of Rule 21 and, as such, the arbitrator had to decide whether it occurred. The arbitrator compared Terrell's alleged conduct with the examples of insubordination in Rule 21, and concluded that Terrell had *not* engaged in insubordination. This decision was within the arbitrator's jurisdiction as outlined by Article II, section 3 of the CBA, and, as now conceded by the Company, drew its essence from the CBA and incorporated rules.

### C.

Thus, the question that remains is whether the Company can avoid the effect of the arbitrator's ruling on the Rule 21 violation by falling back on Rule 1 to support its argument that the arbitrator acted without jurisdiction. As with its forsaken position

regarding Rule 21, it bases this argument on the language of Article II, section 3 of the CBA, which states that the Company has the right to make rules and that the only question that may be the subject of a grievance under these rules is whether "the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action." The Company argues that because it had charged Terrell under Rule 1, i.e., with abusive language and throwing objects, the arbitrator was limited to determining whether such conduct had occurred, and that, if it had occurred, the arbitrator was barred by the CBA from judging the propriety of discharge as a punishment.

■ After analysis, we must reject Sysco's argument. We begin by noting that it is the courts' duty to determine the extent of the arbitrator's jurisdiction. That it is within the *court*'s jurisdiction to determine the extent of an *arbitrator*'s jurisdiction is best demonstrated by cases in which a union sought an order to arbitrate when the company, arguing that the grievance was beyond the arbitrator's jurisdiction, refused to arbitrate voluntarily: "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 1418, 89 L.Ed. 2d 648 (1986); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). Although we review this question *de novo,*

there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

---

**3.** Sysco argued in the district court and its brief before this court, that the arbitrator had exceeded his jurisdiction in determining that the conduct described by Wilson was not insubordination. The Company's contention was that it

designated Terrell's conduct as insubordination and Article II, section 3 of the CBA limited the arbitrator to the factual question of whether Terrell engaged in the conduct as described by the Company witness.

*Warrior & Gulf*, 363 U.S. at 582–583, 80 S.Ct. at 1352–1353.

*AT & T Tech., Inc.*, 106 S.Ct. at 1419. In the case before us, then, we must determine whether the CBA and the incorporated rules are susceptible to a reading that would allow the arbitrator the jurisdictional power to set aside Albert Terrell's discharge and order him reinstated. In doing so, we find that the arbitrator's jurisdiction arises from the interaction between Article II, section 3 of the CBA and the wording of the incorporated rules.[4] Article II, section 3, as we have seen, gives the Company the right to make rules and regulations, and states in essence that arbitration of any grievance covered by one of these rules will be limited to a determination of whether a violation actually occurred. The Company rules are divided into two sections. Rule 1 is in the first section, and states that violations of that rule "will result in disciplinary action." The second section, which includes Rule 21, is prefaced by the statement: "A violation of any of the following rules will subject the employee to immediate termination." It is reasonable to infer that this usage of terms, when placed in context, means that a violation of any of the first set of rules does not carry the penalty of immediate termination, but rather subjects the employee only to disciplinary action less than discharge. In other words, because the Rule 1 penalty refers only to "disciplinary action," the term excludes discharge since the second part of the rules finds it necessary to define the penalty as "immediate termination," an apparent gradation in penalty not included in the term "disciplinary action." Such an interpretation of "disciplinary action" as a penalty less than discharge is buttressed by the fact that Rule 1 governs less serious offenses than Rule 21, and a lesser penalty is logically and reasonably justified. We thus find quite reasonable the proposition that the division of the rules into two categories demonstrates the parties' intent to isolate the violations deserving discharge from those requiring a less harsh punishment.

Thus, the arbitrator could reasonably conclude that he did not need to decide whether Rule 1 had been violated because no punishment had been invoked under that rule. Once having decided that Rule 21 had not been violated, the arbitrator dismissed the punishment administered pursuant to that rule. Since no other punishment had been imposed, whether Rule 1 had been violated was a dead issue that could not affect the outcome of the case. We note that as a practical matter, this conclusion has factual support in that the Company's initial notice to the Union specifically stated the reason for discharge as insubordination, which is a violation only of Rule 21.

Because the arbitrator found that the only offense with which Albert Terrell was charged that carried the penalty of discharge was not committed, we conclude that the arbitrator's ruling that set aside the discharge of Albert Terrell and ordered him reinstated was within the arbitrator's jurisdiction.

### D.

This interpretation of the rules does not diminish the force of the language of Article II, section 3 of the CBA. It is clear that if the arbitrator had found Terrell guilty of insubordination, section 3 would have precluded any further inquiry as to whether immediate termination of his employment was too severe a punishment. It is equally clear that if the Company had based its charge against Terrell on Rule 1 and imposed any discipline less than immediate termination, evaluation of whether the punishment fit the offense would be beyond the arbitrator's jurisdiction.

### IV

We find that the arbitrator acted within his jurisdiction both in finding that no insubordination had occurred under Rule 21, and in his analysis that Rule 1 does not call for immediate discharge and so did not

---

**4.** The rules, promulgated pursuant to authority in the CBA, have the force of contract language.

*Intern. Union of Elec. Radio v. Ingram Mfg.*, 715 F.2d 886, 891 (5th Cir.1983).

apply. The judgment of the district court is therefore

AFFIRMED.