# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4219

_____

| | | |
|---|---|---|
| Trailmobile Trailer, LLC, Successor by Merger with Gemala Trailer Corporation, | * * * * | |
| Appellant, | * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| v. | * | |
| International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO; Local Union No. 1149, | * * * * * | |
| Appellees. | * | |

_____

Submitted:  June 12, 2000

Filed:  August 14, 2000

_____

Before WOLLMAN, Chief Judge, McMILLIAN, and BYE, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Trailmobile Trailer, LLC (Trailmobile), appeals from the district court's[1] grant of summary judgment enforcing an arbitration decision.   We affirm.

**I**.

The facts are undisputed.  Gwen Wigginton worked as a painter for Trailmobile until January 14, 1997, when he was discharged for an altercation with co-worker Joe Garcia that occurred on the previous day.  At Trailmobile's facility, workers such as Wigginton are represented by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL-CIO, and its Local Union, No. 1149 (collectively, the union).

The agreement between the union and Trailmobile includes the following four provisions:[2]

"[T]his Agreement does not affect and shall not be deemed or construed to impair or limit in any way the Employer's right in its sole discretion and judgment, to . . . hire, promote, demote, and transfer, to suspend, discipline and discharge for just cause; . . . .   The Employer shall also have the right . . . to make and enforce . . . reasonable rules . . . ."  Art. II (management rights clause).

"In the event an employee is discharged and he believes there is no just cause, he . . . shall grieve the matter . . . ."  Section 10.4.

---

[1]The Honorable Susan Webber Wright, Chief United States District Judge for the Eastern District of Arkansas.

[2]The quoted agreement became effective on December 4, 1997.  This is the contract that the parties provided, so we assume that its language does not deviate in any relevant way from that of the agreement in effect when the fight occurred.

"The arbitrator shall have no authority to amend, modify, nullify, ignore, add to or subtract from the provisions of the Agreement." Section 11.3.

"In any case in which the discharge or discipline of an employee is at issue, the Arbitrator shall determine whether the discharge or discipline was for just cause." Section 11.6.

The employee handbook promulgated by Trailmobile states that: "Following are examples of some offenses which may subject an employee to immediate discharge without warning:

    a.      Any act which might endanger the safety or lives of others.

    . . .

    i.      Fighting on Trailmobile's premises (any employee directly involved)."

Wigginton was discharged for violating rules 2a and 2i of the handbook.

After Wigginton's termination, the union filed a grievance on his behalf. The process failed to achieve a successful resolution, and the parties then submitted the matter to an arbitrator, stipulating to the following issue: "Did the Company have just cause for terminating Gwen Wigginton? If not, what should the remedy be?"

Although concluding that Wigginton "[p]robably . . . could have turned his cheek one more time," the arbitrator found that Garcia had provoked and pushed Wigginton to start the fight, and that Wigginton had responded in self-protection. For two years or more Garcia had harassed and played nasty tricks on Wigginton, who had rarely retaliated, instead requesting transfers from management. The arbitrator noted that although Wigginton "got in some blows" during the altercation, both men testified that machinery and parts caused some of Garcia's injuries. The arbitrator determined that Garcia was "wholly at fault in provoking" the altercation, and noted that although

several employees had been discharged for fighting, there was also testimony that others had received lesser penalties for such conduct. The arbitrator then concluded that just cause did not exist for Wigginton's discharge and ordered that he be reinstated with retroactive benefits, less two months' salary.

Trailmobile then sought to vacate the arbitrator's award in the district court. The union counterclaimed for enforcement. The court concluded that the arbitrator's decision was within his authority and entered judgment in favor of the union. Trailmobile appeals, arguing that the arbitrator imposed his own brand of industrial justice and ignored the plain language of the contract.

## II.

We review de novo both the district court's grant of summary judgment, see Taylor v. Nimock's Oil Co., 214 F.3d 957, ___ (8th Cir. 2000), and the court's legal conclusions in its denial of a motion to vacate an arbitration award, see Homestake Mining Co. v. United Steelworkers, 153 F.3d 678, 680 (8th Cir. 1998). Our review of an arbitration award generally involves two inquiries: (1) Did the parties agree to arbitrate? and (2) Did the arbitrator have the power to make the award that he made? See Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471, 80 F.3d 284, 287 (8th Cir. 1996). Only the answer to the second question is disputed.

Judicial review of a final arbitration decision is extremely narrow. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). We will vacate an arbitration award as beyond the power of the arbitrator only in certain circumstances; if, for example, it exceeds the arbitrator's power, see 9 U.S.C. § 10(a)(4), or if the award fails to "draw its essence" from the contract between the disputants. See Osceola County Rural Water Sys., Inc. v.

-4-

Subsurfco, Inc., 914 F.2d 1072, 1075 (8th Cir. 1990). Although the arbitrator's authority is broad, it is not unlimited. See id. For example, the arbitrator may not disregard or modify unambiguous contract provisions. See id.

Trailmobile contends that the arbitrator ignored the plain language of the management rights clause, which grants to it "sole discretion" in employment decisions. Trailmobile concedes, however, that its authority to discipline is limited by the requirement that such discipline be for "just cause," a term that is not defined in the contract. Notwithstanding this concession, Trailmobile argues that the arbitrator's finding that Wigginton was involved in a fight constituted an implicit finding of just cause for discharge, inasmuch as discharge is the default penalty fixed by the employee handbook for that infraction. Trailmobile asserts that because the plain language of the contract gives to it the authority in its sole discretion to determine appropriate punishment, the arbitrator's decision was not drawn from the essence of the contract. We disagree.

Whether Wigginton was discharged for just cause was a matter of contract interpretation within the arbitrator's domain. The parties' request gave the arbitrator the authority to decide the issue of whether just cause existed for termination. See Homestake Mining, 153 F.3d at 680 ("[W]e will not give credence to [the party's] argument that the arbitrator had no authority to decide an issue it agreed to submit.") (internal quotation marks omitted); Misco, 484 U.S. at 37 ("[T]he moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.") (quotation marks and citation omitted); IMC-Agrico Co. v. International Chem. Workers Council of the United Food & Commercial Workers Union, 171 F.3d 1322, 1329 (11th Cir. 1999) ("The arbitrator's decision in this case was exactly what the parties bargained for and it should not be disturbed."). Having requested that the arbitrator determine whether Wigginton was discharged for just cause, Trailmobile will not now be heard to complain that the arbitrator performed the analysis that it requested instead of making a purely factual finding. It was for the

arbitrator to harmonize any discordant provisions within the contract relating to the discretionary authority granted management and the just-cause requirements limiting that authority. See Homestake Mining, 153 F.3d at 680.

Moreover, the arbitrator did not ignore the plain language of the agreement when he interpreted the contract. Trailmobile urges us to recognize that its employee handbook rules promulgated pursuant to the management rights clause have the force of contract provisions, citing Mountaineer Gas Co. v. Oil, Chem., & Atomic Workers Int'l Union, 76 F.3d 606, 610 (4th Cir. 1996) ("[W]hen the . . . agreement reserves to management the right to make and enforce disciplinary rules, any rules or policies . . . are thus incorporated into the collective bargaining agreement and have the force of contract language."), which in turn relied on General Drivers, Warehousemen & Helpers Local Union 968 v. Sysco Food Servs., Inc., 838 F.2d 794, 796 n.1, 799 & n.4 (5th Cir. 1988).

Other courts of appeals have declined to apply Mountaineer in the broad way that Trailmobile suggests, holding instead that when an agreement does not define just cause and does not include an explicit provision for offenses that will lead to termination, a reviewing court must defer to an arbitrator's interpretation of the just cause provisions. See IMC-Agrico, 171 F.3d at 1328; First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, 118 F.3d 892, 896-97 (2d Cir. 1997). The Second Circuit rejected Mountaineer's broad holding because the agreement of the parties in Sysco Food Services included a management rights clause that "explicitly provided that the Company had the right 'to make and enforce rules and regulations and that violation thereof may be just cause for the discipline or discharge of employees,'" and which "stated that '[t]he only question which may be the subject of a 'grievance' is whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action.'" First Nat'l Supermarkets, 118 F.3d at 897 (quoting Sysco Food Servs., 838 F.2d at

796.). No such provisions existed in the contract at issue in First Nat'l Supermarkets. See id.

Our case law similarly differentiates between explicit contractual language and rules or policies promulgated under a general management rights clause like the one in the present case. In Local 238 Int'l Bhd. of Teamsters v. Cargill, Inc., 66 F.3d 988, 989-90 (8th Cir. 1995) (per curiam), an employee was discharged pursuant to a drug policy incorporated by reference into an agreement that provided that any disputes over the policy would trigger the grievance process. We stated that if the agreement had "expressly provided that an employee . . . will be terminated, we would agree . . . that the arbitrator's award ignored the plain mandatory language of that agreement," but the "policy was not written verbatim into" the agreement, and thus because there remained a tension or ambiguity in the contract provisions, we upheld the arbitrator's interpretation. Id. at 990 (internal quotation marks omitted). Concerning remedy, we upheld the arbitrator's decision that "when the parties agreed to commit drug and alcohol policy disputes to the normal grievance/arbitration process, that included such remedial discretion as an arbitrator customarily has in reviewing terminations for just cause." Id. In contrast, in Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431, 102 F.3d 1464, 1466, 1470 (8th Cir. 1996), we vacated an arbitrator's award because the relevant contract contained a clause that provided that "[a]n employee shall lose [his job] for the following reasons," and then listed the infractions, one of which the employees had admittedly violated. We held that "[w]hen the [agreement] contains an express provision authorizing the termination of an employee for specific conduct, the general 'for cause' provision . . . does not conflict with the express discharge provision and thus no ambiguity exists." Id. at 1470.

Trailmobile's handbook rules were not expressly written into the contract, which specifically provided for arbitration of disputes regarding discharge, and Trailmobile cites to no contract limitation on the arbitrator's power of remedy other than the provisions for employer discretion previously discussed. Furthermore, the handbook

rule provides that an employee "may" be discharged, suggesting a case-by-case analysis that further supports the arbitrator's decision to review the choice of a disciplinary measure. Accordingly, we conclude that the arbitrator did not violate the plain language of the contract when he determined that Wigginton had engaged in fighting and yet should not have been discharged.

Trailmobile's final contention is that the arbitrator should have considered the union's failure to object to or grieve past discharges as a "common law of the shop" that gives to Trailmobile the discretion to determine whether discharge is appropriate. We find this argument to be without merit. Whatever the union's passivity in the past, the contract provides that past practices shall not "be considered as a waiver or lessening of any Union, employee or Company right provided in this Agreement." Section 11.5. In any event, we note that the arbitrator did in fact consider testimony on the subject of what penalties employees had received for fighting in the past.

In sum, it was the arbitrator's task to reconcile the contract provisions to determine whether there was just cause for Trailmobile to discharge Wigginton. The arbitrator brought his experience to bear and "entered an award in accordance with [his] understanding of the meaning of the contract provisions. That was [his] prerogative and duty, and we see no justification for setting aside" the award. Osceola, 914 F.2d at 1075.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-