Harold **MONTZ**, Plaintiff,

*v.*

**ASPLUNDH TREE EXPERT CO., et. al., Defendants.**

No. CIV. A. 00–1283.

United States District Court, E.D. Pennsylvania.

May 29, 2001.

David L. Deratzian, Hahalis and Kounoupis, Bethlehem, PA, for Plaintiff.

Doreen S. Davis, Kristen Blanchard, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Defendant.

Charles T. Joyce, Spear, Wilderman, Borish, Endy, Spear & Runckel, Philadelphia, PA, for Local 126.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff is a former employee of Asplundh Tree Expert Co. ("Asplundh"). He claims that, under § 301 of the Labor Management Relations Act, see 29 U.S.C. § 185, Asplundh's decision to fire him

when he failed to report to work for "storm duty" breached the collective bargaining agreement with defendant Local 126 ("the union"), and that the union violated its duty of fair representation in failing to take his resulting grievance with Asplundh to arbitration.

■ In order to recover under § 301, a party must show that: (1) the employer violated the applicable collective bargaining agreement; and (2) the union violated its duty of fair representation. *See Findley v. Jones Motor Freight,* 639 F.2d 953, 957–58 (3d Cir.1981). Before the court are the parties' motions for summary judgment. *See* doc. nos. 10, 11, & 13. Because plaintiff has failed to raise a genuine issue of fact as to whether Asplundh violated the collective bargaining agreement, both Asplundh and the union are entitled to summary judgment.

Asplundh is in the business of clearing trees and other debris from power lines. Because demand for Asplundh's services increases greatly when storms or other emergencies arise, Asplundh has a heightened business need to ensure that its employees report to work when severe weather or other emergencies arise. In light of this business need, Asplundh has bargained with the union for a provision in the collective bargaining agreement between Asplundh and the union (the "CBA"), which grants Asplundh increased authority with respect to disciplinary matters that arise when an employee fails to report for storm or emergency work.[1] The CBA specifically provides that Asplundh can terminate an employee immediately, without regard for the progressive disciplinary steps set forth elsewhere in the CBA, for an "[u]njustified refusal to report for storm or emergency work." Def. Asplundh's Mem. of Law in Support of Mot. for Summ. J. Ex. B, at Art. XII § 12.2.

■ "It is an unobjectionable principle than an employer can bargain to have included in a collective bargaining agreement a provision to the effect that certain types of conduct always provide just cause for discharge." *IMC–Agrico Co. v. Int'l Chem. Workers Council,* 171 F.3d 1322, 1327 (11th Cir.1999). When such a provision is included in a collective bargaining agreement, the effect is to divest a court or an arbitrator of the authority to determine whether the disciplinary sanction imposed by the employer was commensurate with the alleged employee conduct. *See id.* ("If the collective bargaining agreement confers on the employer the absolute right to discharge employees for certain types of conduct, then the inquiry of an arbitrator can be limited to 'whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action.'") (quoting *General Drivers, Warehousemen and Helpers Local Union 968 v. Sysco Food Services, Inc.,* 838 F.2d 794, 796 (5th Cir. 1988)). Therefore, this case is distinguishable from those cases where the CBA merely prohibits an employee's termination without just cause. *See IMC–Agrico Co.,* 171 F.3d at 1326–27 (distinguishing between cases where an arbitrator had authority under the CBA to "review the appropriateness of the discipline imposed" from those in which an arbitrator had no such authority). The employer's determination that the employee is subject to disciplinary action, however, must be made in

---

1. Asplundh also requires its employees as a condition of employment to sign a document entitled "Terms of Employment" which provides that "[f]ailure of an employee to report to work after being called for Emergency Response is grounds for disciplinary action up to and including discharge. Immediate response to a Storm Emergency is critical." *See* Defendant Asplundh's Mem. of Law Ex. C.

good faith and with a reasonable basis. *See Kucinski v. Morning Call, Inc.,* No. CIV.A.90–4535,1994 WL 66698, at *5 n. 3 (E.D.Pa. Mar.1, 1994) (stating that an employer's disciplinary action is not unjustified where an employer acts in good faith and with a reasonable basis for its action). In this case, the court's authority is thus limited to a review of whether the employer's determination that plaintiff's failure to report for storm duty was "unjustified" was made in good faith and upon a reasonable basis in the record.

■ Plaintiff does not dispute the fact that he failed to report for storm duty on the night of September 17, 1999. Instead, he claims that his failure to report to work was "justified" within the meaning of the CBA because he had to tend to his flooded basement that night. Asplundh does not contend that plaintiff's stated reason, that his basement flooded, was insufficient to "justify" his missing storm work under the CBA. Rather, Asplundh found that plaintiff's absence was unjustified because plaintiff lied about his basement being flooded on the night he failed to report for storm duty.

Asplundh's General Foreman, Patrick Pinelli, the decision maker in this case, chose not to believe plaintiff's story for two reasons. *See* Pinelli Dep. at 57. First, plaintiff's crew supervisor, Ken Shemelia, told Pinelli that plaintiff had informed Shemelia that he would not be reporting for work as directed on the night of September 17 because he had to tend to duties relating to his landscaping business the next day, September 18.[2] *See id.* Second, plaintiff failed to call anyone at Asplundh to advise them that he would be absent from his September 17, 1999 shift. *See id.* As Pinelli noted in his deposition, "if [plaintiff] would have had problems with his basement, he could have certainly picked up the phone." *See id.* at 56. Given that Asplundh had expressed in clear and unmistakable terms the importance it placed on having its employees available in weather emergencies,[3] Pinelli reasonably determined that plaintiff's failure to call Asplundh the night of his absence indicated that plaintiff had no legitimate reason why he could not come to work that night.

Plaintiff denies making any statement to Shemelia concerning his intention not to report for his shift on the night of September 17. He contends that Pinelli was wrong to believe Shemelia and to disbelieve plaintiff, but does not point to any evidence suggesting that Shemelia's statement to Pinelli was animated by had any animus on the part of Shemelia against him. Under the circumstances of this case, where the parties had agreed to bypass progressive discipline in dealing with employee absences during storm or emergency work, and balancing the evidence before Pinelli, the court concludes that Shemelia's statement, unimpeached by any claim of animus, taken together with plaintiff's failure to notify Asplundh of his expected absence on the night of the storm,

2. It is undisputed that if plaintiff had reported for work on the night of September 17, it would most likely have interfered with his ability to perform landscaping duties on September 18 because of the duration of the storm response shifts worked by Asplundh's tree-clearing crews. Plaintiff and Shemelia's previous shift had begun on September 16 and lasted 18 hours, until 6:00 p.m. on September 17. In plaintiff's absence on the night of September 17, Ken Shemelia and his son, Chris Shemelia, worked from 11:30 p.m. to 3:30 p.m. on Saturday, September 18, a total of 16 hours.

3. In both the CBA and the separate "Terms of Employment" letter, Asplundh had underscored the importance of reporting for storm duty.

provided Pinelli with a good faith and reasonable basis for terminating plaintiff.

■ Plaintiff also attacks the decision made by Douglas Gober, Asplundh's vice president, to deny plaintiff's grievance. The denial followed a conference held between the parties pursuant to Article II, § 2.1(C) of the CBA. *See* Asplundh's Mem. of Law Ex. B. The denial of a grievance, contrary to plaintiff's contention, does not constitute a separate violation of the CBA. Rather it allowed the parties to proceed to "Step D" of the grievance procedure, the arbitration of the grievance. *See id.* Art. II, § 2.1(D).

■ Assuming for the purposes of this case that failure to adjust the grievance would constitute a violation of the CBA, the court finds that Gober's denial of the grievance was made in good faith and that Gober had a reasonable basis for his decision. At the "Step C" conference, in addition to the evidence upon which Pinelli based his decision, Gober considered: (1) a written statement by Ken Shemelia reaffirming his oral representation to Pinelli that plaintiff told him that he would not be reporting for the September 17 shift because he had to attend to his landscaping business the next day; and (2) Chris Shemelia's testimony that plaintiff said he was not going to show up for storm duty on the night of September 17, thus corroborating the testimony of his father, Ken Shemelia. On the other hand, although plaintiff stated at the hearing that as a result of the flood, both his sump pump and his hot water heater had been damaged, he failed to provide any evidence to Gober showing that either the pump or the heater had indeed required repairs. Moreover, plaintiff did not produce either his fiancee and/or his teenage son, who, according to plaintiff, were present at plaintiff's house at the time of the flood and assisted plaintiff in cleaning out his basement and thus could have corroborated plaintiff's flood story.[4]

Plaintiff contends that the evidence upon which Pinelli and Gober made their respective decisions is insufficient to constitute just cause for his termination, because "Asplundh, even to this day, has no evidence that [plaintiff] failed to report to work for any reason other than an emergency at home...." *See* Pl.'s Mem. of Law at 11. Under the CBA, however, Asplundh was not required to produce direct evidence that no flood had occurred and that plaintiff's basement was in fact dry. Instead, Asplundh satisfied its burden under the CBA by showing that there was sufficient circumstantial evidence from which Asplundh could reasonably and in good faith conclude that plaintiff's explanation for his absence was not truthful. From the evidence before them, both Pinelli and Gober were justified in inferring that the basement had not flooded on the night of September 17.

For the reasons stated above, defendants' motions for summary judgment are granted, and plaintiff's motion for summary judgment is denied.

### JUDGMENT

**AND NOW**, this **29th** day of **May, 2001,** for the reasons stated in the court's memorandum dated May 29, 2001 and the court's order dated May 25, 2001, it is

---

**4.** Any such confirmation of plaintiff's story would have been extremely helpful to plaintiff's grievance. Asplundh does not maintain that plaintiff was fired because a basement flood would not have justified his absence on September 17, but instead because Pinelli and Gober determined that he was lying about the real reason for his absence, his landscaping obligations on September 18. Plaintiff does not argue that his landscaping duties on September 18 would have justified his absence for the September 17 storm work shift.

hereby **ORDERED** that **JUDGMENT** is **ENTERED** for defendants and against plaintiff on all claims.

AND IT IS SO ORDERED.