**ARTCO–BELL CORPORATION,**
Plaintiff,

v.

**LOCAL LODGE 2427, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 776, Defendant.**

No. 4:02–CV–398–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Aug. 27, 2002.

Robert G. Mebus, Haynes & Boone, Dallas, TX, for plaintiff.

Rod Tanner, Rod Tanner & Associates, Fort Worth, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

MCBRYDE, District Judge.

Came on for consideration the motion of defendant, Local Lodge 2427, International Association of Machinists and Aerospace Workers, District Lodge 776, for judgment on the pleadings. Having reviewed the motion, the response of plaintiff, Artco–Bell Corporation, the reply, the pleadings, and applicable authorities, the court finds that the motion should be granted to the extent provided herein.

### I.

#### The Pleadings

On April 22, 2002, plaintiff filed its complaint, which it amended the next day. Attached as exhibits to the amended complaint are (1) a copy of the collective bargaining agreement ("CBA") between the parties, (2) a copy of the questioned arbitration award and opinion, (3) a document entitled "Progressive Discipline Policy," and (4) a document entitled "Employee Behavior Policy."

The action concerns the outcome of an arbitration regarding the termination of Larue Hawkins ("Hawkins"), a former employee of plaintiff. Plaintiff alleges that Hawkins had repeatedly fallen below plaintiff's standards and was terminated by plaintiff for that reason on June 5, 2001. According to plaintiff, prior to termination, Hawkins received the benefit of each of the steps prescribed by plaintiff's progressive discipline policy. Thereafter, the grievance procedures in the CBA were exhausted. Then, the dispute was submitted to arbitration before Francis X. Quinn. The question presented to the arbitrator was, "[d]id the Company have just cause in terminating the employment of Larue Hawkins?" Amended Compl.Ex. 2 at 1. The arbitrator made an award on March 25, 2002, finding that "[t]he question at issue is answered in the negative," and ordering that Hawkins's termination be reduced to a 90–day suspension. *See id.* at 7. Plaintiff seeks a judgment vacating the award.

On May 13, 2002, defendant filed an answer and asserted a counterclaim seeking enforcement of the arbitration award and recovery from plaintiff of costs and attorney's fees. Plaintiff filed an answer to the counterclaim on June 3, 2002.

### II.

#### Grounds of Defendant's Rule 12(c) Motion, and Plaintiff's Response

Defendant's motion seeks judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Specifically, defendant maintains that the facts alleged by plaintiff in the amended complaint establish that the award of the arbitrator is rationally inferable from the letter or purpose of the CBA and, therefore, is not subject to judicial scrutiny and is enforceable. The relief requested is (1) dismissal of plaintiff's claims, (2) judgment enforcing the arbitration award, and (3) recovery from plaintiff of defendant's costs and attorney fees.

Plaintiff responds that judicial review is proper in the present case, and the award should be vacated, because the arbitrator exceeded his authority by (1) altering the imposed punishment after implicitly finding a form of "just cause" and (2) adding, in violation of the CBA, an additional step to the progressive discipline policy adopted by plaintiff.

## III.

### Applicable Rule 12(c) Principles

Rule 12(c) provides, in pertinent part, that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(c) motion is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *See Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990). The court accepts as true all facts alleged in the amended complaint. *St. Paul Fire & Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 343 n. 3 (5th Cir.1999); *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir.1991). And, of course, the amended complaint includes all exhibits thereto. FED.R.CIV.P. 10(c); *Neville v. American Republic Ins. Co.*, 912 F.2d 813, 814 n. 1 (5th Cir.1990); *Drefchinski v. Regan*, 589 F.Supp. 1516, 1519 n. 1 (W.D.La.1984).

## IV.

### Facts Established by the Amended Complaint

Plaintiff and defendant entered into the CBA, effective June 1, 1999, for the purpose of

> defin[ing] clearly the obligations and responsibilities of both, to the end that if, in the future, disputes arise between the Company and the Union, this agreement and its provisions, shall be recognized by both as the document which sets out the obligations and responsibilities of both the Company and the Union.

Pl.'s Am.Compl., Ex. 1 at § 6.01. The CBA further provides:

> The provisions of this contract constitute the entire agreement between the Company and the Union, and no agreement alteration, understanding, variation, waiver or modification of any of the terms, conditions, or covenants contained herein shall be made by an employee or group of employees with the Company, and in no case shall it be binding upon the parties hereto unless such Agreement is made and executed in writing.

*Id.* at § 4.02. Pursuant to the CBA, plaintiff retains the right to "fire for just cause" and to "lawfully establish all policies and conditions of work (including Company rules) with [sic] are not in violation of Agreement, so long as same are uniformly applied to all employees." *Id.* at Art. II(1). The CBA provides for arbitration of grievances. *Id.* at Art. XXV. Pursuant to the agreement, "[t]he arbitrator shall have no power to add to, or subtract from or modify any of the terms of the [CBA] or modification thereof." *Id.* at § 25.03.

Plaintiff manufactures school furniture for classroom use. Hawkins was employed as a load machine operator and had worked for plaintiff for fifteen and one-half years. He was responsible for manufacturing and trimming plastic shell coverings for chairs. On June 5, 2001, he was terminated for "leaving shells with rough edges and poor trimming." Pl.'s Am.Compl., Ex. 2 at 2.

Plaintiff followed a progressive discipline policy that included five steps: (1) verbal corrective contact; (2) documented corrective contact; (3) warning; (4) final warning; and (5) discharge. Pl.'s First Am.Compl., Ex. 3 at unnumbered 1st & 2d pages. Hawkins had received corrective contact on April 30, 2001, for leaving rough edges and generally unclean trimming. He received warnings on May 4, 9, and 10, 2001, for leaving shells with very rough edges. On May 18, 2001, he was given a final warning for leaving shells with rough edges and poor trimming. *Id.*, Ex. 2 at 3.

After Hawkins was terminated, defendant filed a grievance that his termination was without proper cause. The grievance was not settled and proceeded to arbitration. The issue before the arbitrator was whether plaintiff had just cause in terminating Hawkins's employment. According to the arbitrator:

> The just cause principle entitles the Grievant to due process, equal protection, and individualized consideration of specific mitigating and aggravating factors. The essence of just cause is the requirement that the employer ... have a demonstrable reason for imposing discipline—in this case, the termination of the employment of Larue Hawkins.

Pl.'s First Am.Compl., Ex. 2 at 5. Further:

> The level of discipline permitted by just cause depends on many factors, including the nature and consequences of the employee's offense and the length and quality of the Grievant's work record. Discipline must bear some reasonable relation to the seriousness and frequency of the offense. Unless otherwise agreed, discipline for all but the most serious offenses should be imposed in gradually increasing levels. The primary object of discipline is to correct rather than punish. Employers should use one or more warnings before suspension and suspension before discharge. In this case [plaintiff] warned [Hawkins] but gave him little means to correct his deficiency. The next jump was termination. Again, the concept of just cause implies not only that the employer had a cause for disciplining Grievant Hawkins, but also that the discipline must be just in relation to the asserted cause—reasonable proportionality between offense and penalty.

*Id.* at 6. The arbitrator concluded that based on the record, Hawkins's years of service, and the undetermined cause of the defective shells, there was not just cause for Hawkins's termination. *Id.*

## V.

### Analysis

■ As a general matter, the court's power to review an arbitrator's decision is extremely limited. The Supreme Court has held that when a company and a union have entered into a collective bargaining agreement which provides for arbitration of disputes,

> the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The court may not overturn an arbitrator's award as long as it "draws its essence from the collective bargaining agreement" and the arbitrator is not merely dispensing his "own brand of industrial justice." *Id.* at 597, 80 S.Ct. 1358. More recently, the Fifth Circuit has held that courts have no authority to set aside an arbitrator's award as long as he "is even arguably construing or applying the contract and acting within the scope of his authority." *Weber Aircraft, Inc. v. General Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir.2001) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).

### A. Implicit Finding of "Just Cause" for Termination

Plaintiff's first contention appears to be based on a misapplication of the law to the facts. In the present case, the arbitrator

explicitly found that "just cause" for termination did not exist.[1] While plaintiff's point that an arbitrator exceeds his authority where he orders a form of discipline less than termination after finding "just cause" for termination is correct, *see Bruce Hardwood Floors v. UBC, S. Council of Indus. Workers, Local 2713*, 103 F.3d 449, 452 (5th Cir.1997),[2] the court finds no support for plaintiff's broader contention that an implicit finding of "just cause" to impose some lesser form of discipline necessitates a finding of "just cause" for termination. The arbitrator's interpretation of "just cause"[3] appears to be consistent with the CBA[4] and applicable law. Indeed, were the court to adopt plaintiff's position, employee foibles that would ordinarily support only a verbal admonishment could provide a basis for termination, and vice versa. Such a scenario would make the concept of "just cause" meaningless.

B. *Adoption of Progressive Discipline Policy and Employee Behavior Policy into the CBA*

Plaintiff next contends that the arbitrator exceeded his authority by adding an additional step to plaintiff's progressive discipline policy. The success of this contention rests on whether the documents entitled "Progressive Discipline Policy" and "Employee Behavior Policy" (collectively, the "policies") are deemed to be an integral part of the CBA. If the policies are construed as being part of the CBA, the arbitrator's award is beyond his authority, as it orders a form of discipline that is not available under the broader CBA.

Plaintiff relies upon *General Drivers, Warehousemen & Helpers Local Union 968 v. Sysco Food Servs., Inc.*, 838 F.2d 794 (5th Cir.1988), for the proposition that all "policies and procedures that are separate from a CBA, but which are promulgated pursuant to a Management Rights clause contained in the CBA, are incorporated as part of the agreement between the parties." Pl.Br. at 9–10. A review of the *Sysco* case, however, indicates that its holding is somewhat less broad. As discussed by a recent Tenth Circuit Court of Appeals decision, the *Sysco* CBA contained a management rights clause that expressly incorporated the employer's policies into the CBA's "just cause" provision. *See Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc.*, 222 F.3d 1223, 1228 n. 2 (10th Cir.2000). The court is inclined to agree with the reasoning of the *King Soopers* court that ancillary policies should not be read into the CBA absent some indication that such was the intent of the parties. *See id.* Here, the CBA does not contain the kind of express language present in *Sysco.* The pleadings do not give any indication that the parties intended for the policies to be read into the CBA. Indeed, the CBA includes clauses stating that the provisions of the CBA constitute the entire agreement between the parties.

VI.

*Defendant's Request for Costs and Attorney's Fees*

While there is no statutory basis for recovery of costs and attorney's fees in

---

1. The arbitrator appears to have made an implicit finding of "just cause" to suspend.

2. Also unlike the present case, the CBA interpreted in *Bruce Hardwood Floors* expressly addressed the progressive discipline policy to be followed in establishing "just cause."

3. As noted by the arbitrator, "[t]he level of discipline permitted by just cause depends on many factors, including the nature and consequences of the employee's offense...." Amended Compl.Ex. 2 at 6.

4. The CBA contains no definition of "just cause."

cases such as this one, there is case authority that an award of attorney's fees is appropriate where the plaintiff's refusal to abide by an arbitration award is without merit. *See Int'l Ass'n of Mach. & Aerospace Workers, Dist. 776 v. Texas Steel Co.,* 538 F.2d 1116, 1122 (5th Cir.1976). However, the court has concluded that, because plaintiff had a colorable argument, and basis for a good faith belief that the award of the arbitrator was not valid, defendant's request for recovery of attorney's fees should be denied. Although unsuccessful, plaintiff's contest of the award was justified. The court is awarding defendant recovery of costs of court from plaintiff.

## VII.

### *ORDER*

For the foregoing reasons,

The court ORDERS that:

A. The relief sought by plaintiff in its complaint be, and is hereby, denied;

B. Plaintiff abide by the arbitration award in question;

C. Defendant's request for recovery of attorney's fees be, and is hereby, denied; and

D. Defendant have and recover from plaintiff costs of court incurred by defendant.